UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

KADAR STAPLETON,

                Plaintiff,              **MEMORANDUM OF
DECISION AND ORDER**

  –against–                            17-CV-00514 (LDH) (LB)

JOSEPH PONTE, DORA B. SCHRIRO, NEW YORK
CITY DEPARTMENT OF CORRECTIONS,
LISETTE CAMILO, NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES, and THE CITY OF NEW YORK,

                Defendants.

------------------------------------------------------------------x
LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Kadar Stapleton, appearing pro se, brings this action against Defendants Joseph Ponte, Dora B. Schriro, New York City Department of Corrections ("DOC"), Lisette Camilo, New York City Department of Citywide Administrative Services, and the City of New York, pursuant to 42 U.S.C. § 1983 and several New York state laws, alleging that his termination from DOC violated his constitutional and state rights. Defendants move pursuant to Federal Rule of Procedure 12(b)(6) to dismiss Plaintiff's complaint in its entirety.[1]

## BACKGROUND[2]

Plaintiff is a former Corrections Officer with DOC. (Compl. ¶¶ 1, 21, 60, ECF No. 1.) According to a report and recommendation, authored by Administrative Law Judge John B.

---

[1] Defendants also move for a stay of discovery pending the resolution of the instant motion to dismiss. Typically, this Court refers discovery motions to the magistrate judge assigned to the matter. However, the Court will undertake consideration of Defendants' request as set forth herein.

[2] The following facts are taken from the complaint. They are assumed to be true for the purpose of deciding the instant motion.

Spooner (the "ALJ"), during Plaintiff's employ with the DOC, he was charged with using excessive force against an inmate while escorting the inmate to the prison clinic. *See generally Dep't of Corr. v. Stapleton*, OATH Index No. 369/13 (Jan. 31, 2013), *modified on penalty*, Comm'r Dec. (Jan. 27, 2014).[3] After the inmate became disruptive, another corrections officer pushed the inmate. *Id.* at 2. Shortly thereafter, Plaintiff got involved and a "shoving match" ensued among the inmate, the other corrections officer, and Plaintiff. *Id.* Video surveillance depicted Plaintiff "using most of the force alleged in the charges, including pushing [the] inmate [] down and kicking [the inmate] at least twice." *Id.* at 3. Following the incident, Plaintiff did not file a report concerning the use of force. *Id.* Instead, Plaintiff waited until he was ordered to file a report in response to the inmate's formal complaint. *Id.* at 5. In his initial report, Plaintiff denied using force. *Id.* Then, ten days later, he filed an amended report stating that he "may have overlooked the need to consider said incident as a use of force." *Id.* at 6.

On August 3, 2012, Plaintiff was issued disciplinary charges and specifications. (Compl. ¶ 31.) *See also Stapleton v. Ponte, et al.*, Index No. 7533/14, at 1–2 (Sup. Ct. Queens Co. Dec. 10, 2014) ("*Stapleton I*"). The charges alleged that Plaintiff used excessive force on an inmate, failed to report the incident, failed to obtain medical attention for the inmate, submitted a false report regarding the matter, and made false statements to DOC personnel regarding the incident. (*Id.*) On December 3 and 4, 2012, a hearing pertaining to these charges was held pursuant to New York Civil Service Law § 75 at the City's Office of Administrative Trials and Hearings ("OATH"). (Compl. ¶ 32.) *See also Stapleton I* at 1. The ALJ sustained each of the nine charged specifications and recommended that Plaintiff be suspended for sixty days. (Compl. ¶¶ 33–34.) *Stapleton,* OATH Index No. 369/13 at 1.

---

[3] Plaintiff incorporated the Administrative Law Judge's Report and Recommendation by reference in his Complaint. (*See* Compl. ¶ 95.)

2

On January 22, 2014, over a year after the ALJ's decision, the DOC Commissioner accepted the ALJ's finding of guilt, but determined that Plaintiff's actions warranted termination due to his "serious violation" of the force directive guidelines. (Compl. Ex. 1.) *See also Stapleton I* at 2. Plaintiff was terminated on January 28, 2014. (Compl. ¶¶ 5, 49.)

Plaintiff subsequently commenced a CPLR Article 78 proceeding seeking judicial review of DOC's decision to remove him from service. (Compl. ¶ 9.) In that proceeding, Plaintiff argued that DOC's decision must be overturned because the ALJ was not authorized to conduct the hearing and the Commissioner failed to explain why she imposed a greater penalty than that which was recommended by the ALJ. *Stapleton I* at 2. The Supreme Court of Queens County rejected both arguments. As to the jurisdictional argument, referencing an earlier Supreme Court decision, *Malone v. Horn*, Index No. 1082250/07, 2008 Slip op. 30111(U) (Sup. Ct. N.Y. Co. Jan. 14, 2008), the court concluded it was "undisputed" that the ALJ was authorized to preside over Plaintiff's hearing. *Id.* Further, the court found that the Commissioner was not required to provide an explanation given the "serious violation" of the force directive guidelines. *Id.* at 2–3. On April 6, 2016, the Appellate Division affirmed the supreme court decision and upheld Plaintiff's termination finding that the court "correctly determined that the Administrative Law Judge was properly designated to conduct the petitioner's hearing and to make recommendations thereon." *Stapleton v. Ponte*, 138 A.D.3d 751 (2d Dep't 2016).

On January 30, 2017, Plaintiff commenced this instant action against Defendants seeking to annul the Commissioner's decision to remove him from service and be reinstated to his former tenured civil service position as a corrections officer. (Compl. ¶ 97.) Specifically, Plaintiff claims that (1) Defendants' failure to designate an officer to conduct the hearing, in accordance with New York Civil Service Law § 75, violated his due process rights and (2) the publication of

the hearing officer's Report and Recommendation stigmatized him, thus violating his civil rights. (Compl. ¶¶ 60–97.)

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[4] *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject matter jurisdiction exists. *Id.* "In reviewing a Rule 12(b)(1) motion to dismiss, the court "'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (citing *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir.2004)). Further "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the

---

[4] Defendants filed their motion solely pursuant to 12(b)(6); however, the Court must treat the portion of the motion challenging subject matter jurisdiction as a motion brought under 12(b)(1). *Magee v. Nassau Cty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) ("A motion challenging subject matter jurisdiction is properly brought under Rule 12(b)(1)."). Further, "faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6)" the Court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Id.* (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

4

[c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. The *Rooker-Feldman* Doctrine

Under law, federal courts are barred from exercising jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

judgments." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This doctrine, referred to as the *Rooker-Feldman* doctrine is properly invoked only where (1) Plaintiff lost in state court, (2) Plaintiff complains of injuries *caused by* the state-court judgment, (3) Plaintiff is inviting this Court's review and rejection of that judgment, and (4) the state-court judgment was rendered before the instant action commenced. *Id.* (emphasis added). Defendants maintain that each of these elements is met and dismissal for lack of subject matter jurisdiction is warranted. The Court disagrees.

As Plaintiff rightly notes, the instant action does not complain of injuries caused by the state court judgment. (*See* Pl.'s Opp. Br. at 8, ECF No. 15.) Here, Plaintiff pleads that his injuries stem from his January 28, 2014 termination and from the January 31, 2013 public posting of the ALJ's determination. (Compl. ¶¶ 60–95.) These injuries occurred 106 and 468 days, respectively, before the filing of the state court action. It is axiomatic that "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings." *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007). Defendants attempt to avoid this conclusion by directing the Court to a single sentence in the preliminary statement section of Plaintiff's pleading: "Believing himself aggrieved by the decisions of former Commissioner Schriro and those of the State Courts, Plaintiff now comes seeking true justice in this Court." (Defs.' Mem. Supp. at 13–14, ECF No. 14, Compl. ¶ 16.) However, contrary to Defendants' assertion, this sentence does not demonstrate that Plaintiff complains of injuries resulting from the state court action. Rather, by this sentence Plaintiff is stating merely that his "preexisting injury" was "ratified, acquiesced in, or left unpunished by [the state court]." *McKithen*, 481 F.3d at 98; *see*

*also Dutrow v. New York State Gaming Comm'n*, No. 13-CV-996, 2014 WL 11370355, at *11–*12 (E.D.N.Y. July 29, 2014), *aff'd*, 607 F. App'x 56 (2d Cir. 2015) (holding that because plaintiff pleaded that his injuries were caused by the Board's revocation of his license without due process of law, as opposed to the state court judgment, which "simply ratified, acquiesced in, or left unpunished" the Board's determination, the *Rooker-Feldman* doctrine did not bar the case from federal review). The *Rooker-Feldman* doctrine simply does not apply here.

## II. Issue Preclusion

Defendants contend that even if the *Rooker-Feldman* doctrine does not operate to bar Plaintiff's claims, they are otherwise barred largely by the doctrine of collateral estoppel. (Defs.' Mem. Supp. at 6–8.) Collateral estoppel bars the re-litigation of a claim where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Vargas v. City of New York*, 377 F.3d 200, 205–06 (2d Cir. 2004). Lest there be any doubt, the doctrine applies to issues decided in Article 78 proceedings. *Dutrow v. N.Y. State Gaming Comm'n*, 607 F. App'x 56, 57 n.1 (2d Cir. 2015) ("[C]ollateral estoppel bars relitigation of *issues* decided in Article 78 proceedings.") (citing *Colon v. Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995) (emphasis in original). Defendants argue that two issues—(1) the ALJ's lack of authority to preside over the hearing and (2) the Commissioner's decision to terminate Plaintiff despite the ALJ's recommendation of a temporary suspension—are barred. The Court agrees.

Here, Plaintiff does not contest—nor could he reasonably[5]—that the basic elements of collateral are met in this case. Instead, Plaintiff argues that collateral estoppel should not be

---

[5] Plaintiff alleges that he is entitled to relief because the hearing officer assigned to his disciplinary hearing was neither a deputy nor designated in writing as required under the civil service law. (Compl. ¶¶ 60–89.) This alleged lack of authorization serves as the basis for Plaintiff's first, second, and fourth claims for relief. Though cloaked as due process claims, the issue presented here—whether the ALJ was authorized to conduct the hearing—is

7

applied on other grounds. As Plaintiff correctly notes, the use of collateral estoppel must be confined to situations "where the controlling facts and applicable legal rules remain unchanged." *Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 599–600 (1948)). Plaintiff's contention that that there has been a marked change in the law applicable to this case, however, is unavailing. In pressing this argument, Plaintiff refers the Court to a recent decision—*Lindo v. Ponte*[6]—rendered by the Second Department. In that case, like the state court proceeding here, the court was charged with determining whether the ALJ had the authority to render a decision on disciplinary charges pursuant to New York Civil Service Law § 75. *Lindo v. Ponte*, 150 A.D.3d 1244, 1246 (2d Dep't 2017). There, the court determined that because the written designation of authority to the ALJ was not in the record and not referred to by the ALJ in her decision, remand was warranted for the limited purpose of supplementing the record to include the requisite writing. *Id.* at 1247.

For the purposes of collateral estoppel, that decision does not constitute a change in the applicable law, as it is not binding on the court before which Plaintiff's case was decided. According to the Appellate Division of the First Department, where Plaintiff's case was heard, the Supreme Court "correctly" decided the issue regarding the ALJ's authority—even absent a copy of the written designation letter in the record.[7]

---

indistinguishable from that presented in his petition before the state court. This issue was necessarily and actually decided in the state court proceeding. Finding against Plaintiff, the state court held that "contrary to petitioner's contentions, Administrative Law Judge John B. Spooner, had the authority and jurisdiction to conduct the subject administrative hearing and make recommendations thereon." *Stapleton I* at 2. Moreover, Plaintiff having appealed to the Appellate Division had not one, but two opportunities to fairly litigate his claim.

[6] 150 A.D.3d 1244 (2d Dep't 2017).

[7] This Court will not presume what may account for the different approaches taken by the First Department and the Second Department. It will note, however, under the doctrine of judicial notice, a court is permitted to take notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Federal Rule of Evidence 201.

Thus, this Court remains bound by the prior state court decisions and finds that Plaintiff cannot relitigate whether the ALJ was authorized to conduct the hearing.[8] Given this finding, the Court need not address the remaining grounds asserted by Defendants for dismissal of the due process claims pursuant to Rule 12(b)(6).[9]

### III. Plaintiff's Stigmatization Claim

In his third claim for relief, Plaintiff alleges that the online publication of the ALJ's report and recommendation constituted a violation of Civil Rights Law § 50-a and stigmatized his efforts to interact with others as well as obtain employment in the same field. (Compl. ¶¶ 90–95.) Construing Plaintiff's claims liberally, as I must, the Court reads his allegations to plead a stigma-plus claim, which if proven constitutes a constitutional violation actionable under Section 1983.[10]

To sufficiently plead a stigma-plus claim, a plaintiff must establish that: (1) the government made stigmatizing statements that call into question his good name, reputation, honor, or integrity; (2) the stigmatizing statements were made public; and (3) "the stigmatizing statements were made concurrently with, or in close temporal proximity to, his dismissal from government employment." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006).

---

[8] It is not apparent from the pleadings in the instant action whether Plaintiff is also challenging DOC's decision to terminate him rather than adopt the ALJ's recommended sixty-day suspension; however, to the extent that he raises the issue, it is collaterally estopped as well. *See Stapleton I* at 2–3 (finding that the "Commissioner was not required to explain why she did not follow the recommendation for a less serious penalty" and holding that "[i]n light of the seriousness of the offenses charged, petitioner failed to demonstrate that the penalty imposed was disproportionate to the offense").

[9] Defendants also present arguments attacking Plaintiff's due process claims on the grounds that (1) Plaintiff received sufficient process to satisfy the due process minima, (2) the complaint fails to adequately plead a *Monell* policy to hold the municipality liable, and (3) the individual Defendants are shielded by qualified immunity. (Defs.' Mem. Supp. at 9–12, 15–17.)

[10] To the extent Plaintiff intended to bring an action for the alleged state privacy violation under either Section 1983 or Section 50-a of the Civil Rights Law, they are dismissed. *First*, "a violation of state law is not cognizable under § 1983." *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985). *Second*, New York courts do not recognize a private right of action for violations of Section 50-a of the Civil Rights Law. *See Carpenter v. City of Plattsburgh*, 105 A.D.2d 295, 299 (3d Dep't 1985), *aff'd*, 66 N.Y.2d 791 (1985) ("[W]e conclude that the Legislature did not intend to create a private right of action for violations of section 50–a of the Civil Rights Law.").

Importantly, a plaintiff "must raise the falsity of these stigmatizing statements as an issue." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). Nowhere in the complaint does Plaintiff allege that the contents of the published report and recommendation are false. Indeed, while Plaintiff argues that the ALJ had no right to issue the report, Plaintiff does not dispute the content of the report. Therefore, Plaintiff's stigma-plus claim must necessarily be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted and Plaintiff's claims are dismissed with prejudice. Further, Defendants' motion to stay discovery is denied as moot. Whereas, ordinarily, the Court would allow a plaintiff an opportunity to amend his pleading, *see Cruz v. Gomez*, 202 F.3d 593, 597–98 (2d Cir. 2000), it need not afford that opportunity, where, as here, it is clear from the face of the complaint that any such amendment would be futile. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) ("Leave to amend need not be granted where the proposed amendment would be futile."). The Clerk of Court is respectfully directed to close this case.

Dated: Brooklyn, New York  
      March 28, 2018

SO ORDERED:

    /s/LDH  
LaSHANN DeARCY HALL  
United States District Judge